OPINION
{¶ 1} Appellants, Earl and Paula D, appeal the decision of the Butler County Court of Common Pleas, Juvenile Division, to grant legal custody of their child, J.D., to J.D.'s paternal grandmother ("grandmother").
 {¶ 2} J.D., born on, September 9, 1989, is a special needs child who was living with his grandmother and attending school in Butler County by agreement between the grandmother and appellants, J.D.'s parents. Appellants are married and reside in Kentucky.[1]
 {¶ 3} A disagreement arose between the parties, and appellants told the grandmother to return J.D. to them. In response, the grandmother filed a motion for legal custody in Butler County. The matter was heard before a juvenile court magistrate in May 2005. The magistrate issued a decision granting the grandmother legal custody. Appellants objected to the magistrate's decision. The juvenile court overruled the objections and adopted the decision. Appellants then filed this appeal, setting forth three assignments of error. For ease of discussion and review, we will address the assignments out of order.
 {¶ 4} Assignment of Error No. 2:
 {¶ 5} "THE TRIAL COURT ERRED WHEN IT EXCLUDED EVIDENCE REGARDING THE PATERNAL GRANDMOTHER KICKING THE FATHER OUT OF HER HOME AT THE AGE OF 12[.]"
 {¶ 6} Appellants argue that the juvenile court erred in not permitting evidence that J.D.'s father left the grandmother's home when he was 12 years old, as appellants believe this evidence negatively reflects on the grandmother's parenting abilities.
 {¶ 7} The admission and exclusion of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. See Renfro v.Black (1990), 52 Ohio St.3d 27, 31-32 (determination of whether evidence is relevant is within trial court's discretion); Evid. R. 401, 402; State v. Issa, 93 Ohio St.3d 49, 64,2001-Ohio-1290. Therefore, we must determine whether the juvenile court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issue. See Barnett v. Sexten, Franklin App. No. 05AP-871, 2006-Ohio-2271, ¶ 4.
 {¶ 8} The father's status at the age of 12 was discussed briefly by the grandmother, who indicated that the father moved back and forth between her home and her ex-husband's home, and by the father, who indicated that the grandmother threw him out of the house. After objections were raised, the juvenile court did not permit any further inquiry on the subject from any witness, stating that the events occurred nearly 26 years ago and were too distant to be relevant.
 {¶ 9} Upon review of the record in the case at bar, we note that the juvenile court permitted the introduction of relevant evidence regarding current parenting issues with respect to both appellants and the grandmother. Therefore, we cannot say that the juvenile court abused its discretion when it limited as irrelevant any further inquiry about events that occurred 26 years ago.[2] Appellants' second assignment of error is overruled.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO A NON-PARENT WHEN THE PARENTS WERE NOT UNSUITABLE[.]"
 {¶ 12} Assignment of Error No. 3:
 {¶ 13} "THE COURT'S CUSTODY ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 14} We will address appellants' first and third assignments of error together, as both assignments dispute the ultimate legal custody decision made by the juvenile court.
 {¶ 15} Legal custody is not as drastic a remedy as permanent custody because parents retain residual rights, privileges, and responsibilities. In re C.R., 108 Ohio St.3d 369,2006-Ohio-1191, ¶ 17. However, we are mindful that the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children. In re Hockstok,98 Ohio St.3d 238, 2002-Ohio-7208, at ¶ 16, citing Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388.
 {¶ 16} In a child custody proceeding between a parent and nonparent, a juvenile court may not award custody to the nonparent without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child. In re Perales (1977), 52 Ohio St.2d 89, syllabus.
 {¶ 17} If a court concludes that any one of these circumstances exists, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody. In re Hockstok at ¶ 17-18.
 {¶ 18} A trial court's custody decision will not be reversed absent an abuse of discretion. In re D.J., Butler App. No. CA2005-10-423, ¶ 7. The discretion granted to the trial or juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned." In re Brown (2001), 142 Ohio App.3d 193, 198, quoting Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 19} The juvenile court in the instant case found that the parents were unsuitable and that awarding them custody of J.D. would be detrimental to the child. The juvenile court supported its determination with a recitation of evidence contained in the record. We will outline below some of the pertinent evidence presented to the juvenile court.
 {¶ 20} Included in the record is testimony from J.D's current therapist. The therapist testified that J.D. told him during therapy that he was abused by both parents, that his older brother slapped him, and that he did not want to talk with his mother. Evidence was admitted without objection that J.D. reported to a pediatrician at Children's Hospital Medical Center that he was fearful of returning to his parents' home because of the conflict and abuse that occurred there.
 {¶ 21} The grandmother testified that she heard J.D.'s mother curse at J.D., and demean and otherwise verbally abuse him. The grandmother testified that J.D.'s father told her that when J.D. misbehaves, the father sits on the child and holds J.D.'s mouth so he cannot scream.
 {¶ 22} The grandmother related an incident in where J.D.'s mother cursed at J.D. during a telephone conversation after J.D. told his mother that he did not want to return to Kentucky for a funeral. The juvenile court admitted as an excited utterance J.D.'s statement to the grandmother that he was "scared if he went down there," and that he was "afraid of what she [his mother] would do."
 {¶ 23} The grandmother also testified that the agreement that J.D. would attend school in Ohio was established because appellants called her and told her that J.D. was having difficulties at school and if the grandmother did not take him, he would be "sent away."
 {¶ 24} J.D.'s paternal grandfather testified that he saw J.D.'s mother slap J.D. and use profanity that was directed at J.D. The paternal grandfather indicated that he once observed one of appellants' friends using illegal drugs at appellants' trailer when appellants and their children were present. The paternal grandfather testified that he never observed J.D.'s father (his son) drunk, but had observed him "pretty well loaded" at times when the children were present. He testified that appellants admitted to him that they "could not handle" J.D.
 {¶ 25} The juvenile court conducted an in camera interview with the child and found the child capable of expressing his wishes and concerns. We have reviewed that in camera interview for this appeal.
 {¶ 26} We find that competent, credible evidence exists in the record to support the juvenile court's finding by a preponderance of the evidence that appellants are unsuitable parents for the child, and that an award of custody to appellants would be detrimental to J.D.
 {¶ 27} After making this determination, the juvenile court reviewed whether awarding legal custody to the grandmother would be in J.D.'s best interest. In deciding that J.D.'s best interest would be served by granting legal custody to grandmother, the juvenile court noted the following evidence:
 {¶ 28} J.D. was having behavioral problems at school in Kentucky. The grandmother testified that J.D. said he was suicidal, and the child's behavior was uncontrollable when grandmother first brought J.D. to Ohio in 2004. J.D.'s behavior has improved since he began attending school in Ohio. According to his special education teacher, J.D.'s behavior was "off the wall" when he first attended school in Ohio, but now J.D. is reportedly behaving well, coming to school every day, and learning.
 {¶ 29} The grandmother has worked with numerous mental health and other medical professionals to provide counseling, medical follow-up, and medication to support J.D.'s needs. J.D. was reportedly attending counseling and receiving medication in Kentucky, but consistency with the dosing of the medication was considered problematic by school officials there.
 {¶ 30} Appellants both apparently receive federal financial assistance based upon undefined disabilities related to "nerves" or anxiety. The grandmother receives worker's compensation for past physical injuries. There was some conflicting testimony about how and when the federal assistance received on J.D.'s behalf was diverted to Ohio.
 {¶ 31} The grandmother and her stepdaughter testified that J.D. lived with the grandmother from eight months of age until he was approximately five years old. Appellants deny that J.D. lived more than a month with the grandmother when J.D. was eight months old, but acknowledge that J.D. spent summers with his grandmother.
 {¶ 32} Appellants deny that they ever abused J.D., and maintain that they discipline him with "time-outs." Appellants assert that the grandmother has refused to allow them to visit J.D. in Ohio and has blocked their attempts to talk with J.D.
 {¶ 33} We are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make.Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. Credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. Miller v. Miller, 37 Ohio St.3d at 74. Therefore, an appellate court affords deference to a judge or magistrate's findings regarding witness credibility. In re D.R., Butler App. Nos. CA2005-06-150, CA2005-06-151, ¶ 12; In re Alexander C.,164 Ohio App.3d 540, 2005-Ohio-6134 at ¶ 6.
 {¶ 34} After reviewing the record, we find that competent credible evidence supports the juvenile court's findings in this case. See, generally, In re Beireis, Clinton App. No. CA2003-01-011, 2004-Ohio-1506. The juvenile court did not abuse its discretion when it determined that the grandmother should be granted legal custody of J.D. Appellants' first and third assignments of error are overruled.
 {¶ 35} Judgment affirmed.
Walsh and Young, JJ., concur.
[1] Appellants signed an agreement granting the grandmother temporary custody and provided documentation that would permit the grandmother to act with power of attorney to facilitate J.D.'s needs with regard to school and medical treatment.
[2] We also note that appellants did not proffer evidence regarding the circumstances of the father leaving the grandmother's home during direct testimony so that this court could review its relevancy and prejudicial impact, if any. See Evid. R. 103(A)(2) (offer of proof should be made), see, e.g.,State v. Caulley (Aug. 5, 1991), Preble App. No. CA91-01-001.