[Cite as *Morrison v. Robinson*, 2013-Ohio-453.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| MICHELLE MORRISON, Deceased, | : | CASE NO. CA2012-06-019 |
| Plaintiff, | : | |
| | : | O P I N I O N |
| | : | 2/11/2013 |
| - vs - | : | |
| | : | |
| PHILLIP ROBINSON, et al., | : | |
| Defendant-Appellant. | : | |


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 98AD0184 and 00AD4160


Mary E. King, 153 East Court Street, P.O. Box 70, Washington C.H., Ohio 43160, for defendant-appellant

Odessa Goodwin, P.O. Box 680, Inez, Kentucky, 41224, defendant-appellee, pro se

Jess Weade, Fayette County Prosecuting Attorney, James B. Roach, 110 East Court Street, Washington C.H., Ohio 43160, for Department of Job & Family Services


**S. POWELL, J.**

{¶ 1} A juvenile court's decision to award legal custody of two minor children to their maternal grandmother is challenged on appeal by the children's father. We find the juvenile court did not abuse its discretion when it found the father unsuitable as the children's custodian and awarded custody to the maternal grandmother.

{¶ 2}  According to the record provided to this court, the two children in this case were born in 1998 and 1999, respectively, and paternity was established with regard to father, appellant Phillip Robinson.  The record shows that the children's mother died in January 2006.  The Fayette County Juvenile Court awarded father legal custody of his two daughters in 2009.

{¶ 3}  In November 2011, the maternal grandmother, appellee Odessa Goodwin, filed a motion for custody.  The motion consisted of a court form indicating the motion for custody was filed pursuant to R.C. 3109.04.  The juvenile court proceeded with this case as if it had never previously made a suitability finding with regard to father.

{¶ 4}  The juvenile court held an evidentiary hearing that was continued over a number of weeks.  The juvenile court found that father was unsuitable to have custody of the children, and found it was in the children's best interest for maternal grandmother to have legal custody.

{¶ 5}  Father filed this appeal, raising three assignments of error for our review.  We note that maternal grandmother did not file a brief, and, as such, we may accept father's statement of the facts and issues as correct and reverse the judgment if father's brief reasonably appears to sustain such action.  App.R. 18(C).

{¶ 6}  Father's Assignment of Error No. 1:

{¶ 7}  THE TRIAL COURT'S AWARD OF CUSTODY TO DEFENDANT-APPELLEE WAS AN ABUSE OF DISCRETION.

{¶ 8}  Father argues in his first assignment of error that the juvenile court erred in finding him unsuitable to have custody as there was no evidence that father met the criteria of unsuitability.

{¶ 9}  Ohio courts have sought to recognize the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of

their children. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 17.

{¶ 10} Where a court is determining child custody in a custody proceeding between a parent and a nonparent in juvenile court, the court may not award custody to the nonparent without first making a finding of parental unsuitability, that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales*, 52 Ohio St.2d 89, syllabus (1977); *see also Hockstok* at ¶ 17.

{¶ 11} If a court concludes that any one of the above circumstances exists, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental interest of child custody. *Hockstok* at ¶ 17-18.

{¶ 12} The record indicates the juvenile court found father unsuitable as custodian of the two children, as such custody would be detrimental to the children. We paraphrase below some of the findings made by the juvenile court with regard to the unsuitability finding.

{¶ 13} The juvenile court found that father sold drugs in front of his children and sold his food stamps to obtain marijuana. He has allowed his children to spend two to three weeks at a time with their great grandmother on a regular basis. Father threatened to commit suicide in the past and is currently taking four different prescription medications. He does not always have food in the house for his daughters.

{¶ 14} The court found that father's only employment is working odd jobs for his landlord, who pays father "under the table." Father has a 16-year-old daughter from a previous relationship with whom he visits once or twice a month and for which he owes $16,000 in back child support.

{¶ 15} In November 2011, father contacted maternal grandmother about taking his two

children for a few weeks because he had a drug problem and needed rehab. Father attended Fayette Recovery one time in December 2011. Father told the court he did not need to go to drug rehab as he was strong enough to do it on his own, even though father acknowledged that Fayette Recovery recommended father attend three sessions per week.

{¶ 16} The court found that during the time frame within which the court ordered father to undergo hair follicle drug testing, father's head was shaved. When the possibility of using a pubic hair sample was discussed, father subsequently appeared for testing with his pubic hair shaved.

{¶ 17} The juvenile court found that the "health and safety of the children are in jeopardy if they remain in their father's residence due to lack of food and the presence of drug transactions around the home."

{¶ 18} After making the unsuitability determination, the juvenile court reviewed whether awarding legal custody to the grandmother would be in the children's best interest. *See* R.C. 2151.23(F)(1) (juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04).

{¶ 19} In deciding that the children's best interest would be served by granting legal custody to maternal grandmother, the juvenile court made findings, which apparently track the best interests factors of R.C. 3109.04(F)(1).

{¶ 20} The juvenile court found that the children have a good relationship with the maternal grandmother. They spent summers with their maternal grandmother, have previously been enrolled in the schools at grandmother's home, and have many relatives living in the area. They also stayed with maternal grandmother for extended periods of time and maintain phone contact with her several times a week. *See* R.C. 3109.04(F)(1)(c),(d).

{¶ 21} Maternal grandmother lives in Inez, Kentucky, which is "under" four hours away from father. Both father and maternal grandmother have considerable time available for the

children. The children are well adjusted to the homes of both parties and have attended school at each residence. R.C. 3109.04(F)(1)(c),(d),(j).

{¶ 22} The juvenile court indicated it considered the wishes and concerns of the children, as expressed to the court in an in camera interview. *See* R.C. 3109.04(F)(1)(b). (We note that father does not raise any claimed error in reference to the interview with the children).

{¶ 23} The court found the children will be living with their half-sibling at maternal grandmother's home and can visit with their other half-sibling, father's 16-year-old daughter, when father has visitation. *See* R.C. 3109.04(F)(1)(c).

{¶ 24} There is no evidence that either party was convicted of an offense or acted in a manner resulting in a child being an abused or neglected child. R.C. 3109.04(F)(1)(h). The juvenile court found that, with the exception of father's drug issues, neither party appeared to have mental or physical health issues. *See* R.C. 3109.04(F)(1)(e).

{¶ 25} Father argues the suitability decision was erroneous because Children Services was given protective supervision during the pendency of these proceedings and never moved for custody, the children were "flourishing at school" in his care, and the finding of unsuitability is contradicted by the liberal visitation he was given by juvenile court.

{¶ 26} A trial court has broad discretion in determining custody matters. *See Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996). The discretion afforded to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). For that reason, we can only sustain a challenge to a trial court's custody decision upon a finding that the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. *Id.*

{¶ 27} A deferential review in a child custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate well to the record. *Id.* at 419.

{¶ 28} We have reviewed the evidence presented and the findings made in this case. As emphasized by the juvenile court, father's drug issues have had a negative impact on his ability to parent, and the juvenile court was concerned about the children's health and safety in father's custody.

{¶ 29} We cannot say the juvenile court abused its discretion when it found father was unsuitable to retain custody of the children. In addition, based on the findings from the juvenile court with regard to maternal grandmother's relationship with the children, we cannot say the juvenile court abused its discretion when it found that legal custody to the maternal grandmother was in the children's best interests. *See In the Matter of J.D.*, 12th Dist. No. CA2005-09-375; 2006-Ohio-3468. We reject the various arguments presented by father and overrule his first assignment of error.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED IN CHANGING CUSTODY TO THE MATERNAL GRANDMOTHER[.]

{¶ 32} Father argues in his second assignment of error that maternal grandmother's case consisted of her own testimony and that of her biased relatives. He avers that a custody decision based on biased testimony is not supported by the manifest weight of the evidence. Father also argues he has no driver's license and no transportation, and any allocation of parenting time to him is "negated" with the children living in Kentucky and, therefore, not supported by the manifest weight of the evidence.

{¶ 33} An appellate court will not reverse a judgment as being against the manifest weight of the evidence where the award of custody is supported by a substantial amount of

credible and competent evidence. *In re M.A.*, 12th Dist. No. CA2011-02-030, 2012-Ohio-545, ¶ 19; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19 (manifest weight of the evidence refers to a greater amount of credible evidence; the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered).

{¶ 34} A review of the hearing testimony reveals that not all of the witnesses who testified in maternal grandmother's case were her relatives. Moreover, the juvenile court as trier of fact was capable of discerning any potential bias from the various witnesses.

{¶ 35} Credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. *Miller*, 37 Ohio St.3d at 74. Therefore, an appellate court affords deference to a judge's findings regarding witness credibility. *In re J.D.*, 2006-Ohio-3468 at ¶ 33.

{¶ 36} The juvenile court heard testimony from numerous witnesses. As previously noted, father presented evidence that the children were doing well in school, and he maintained that the children had food to eat. Father acknowledged that he gave the children to the maternal grandmother so he could attend rehab, but told the court he asked for their return the next day. He indicated he did not need rehab.

{¶ 37} Father testified he was undergoing counseling with his church youth leader, who is also his landlord and the person who hires him for odd jobs. He said he was being treated for "nerves," and was taking medications for his back and for other injuries. Father testified he did not shave his hair to avoid the hair follicle drug test, as he shaves his head periodically and always shaves his pubic hair.

{¶ 38} Father told the court he permitted the children to stay with different relatives

because the relatives asked to see them and he did not want to keep the children from their family. He conceded he does not have a driver's license and has no means of transportation.

{¶ 39} Father's transportation dilemma is unfortunate. However, the juvenile court was required to make this difficult decision mindful of the best interests of the children. After applying the pertinent standard of review for this manifest weight of the evidence challenge, we cannot say the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. We have considered father's arguments and find none of them well taken. Father's second assignment of error is overruled.

{¶ 40} Assignment of Error: No. 3:

{¶ 41} THE TRIAL COURT'S AWARD OF CUSTODY TO DEFENDANT-APPELLEE WAS AN ABUSE OF DISCRETION BASED ON THE EVIDENCE PRESENTED AT TRIAL[.]

{¶ 42} Under his third assignment of error, father argues that the juvenile court abused its discretion in admitting evidence that was not relevant and not properly authenticated.

{¶ 43} Specifically, father argues the juvenile court admitted irrelevant evidence when it permitted testimony that he is behind in his child support obligation for a minor who is not part of this case.

{¶ 44} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶ 45} Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. *Battelle Mem'l Inst. v. Big Darby Creek Shooting Range*, 192 Ohio App.3d 287, 2011-Ohio-793, ¶ 26 (12th Dist.). An appellate court reviewing the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *Id.*

{¶ 46} One of the best interests factors for the juvenile court to consider in making its decision under R.C. 3109.04(F)(1) states that the court shall consider "whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor." R.C. 3109.04(F)(1)(g).

{¶ 47} The record indicates father is the obligor to and in arrears for child support for his 16-year-old daughter. The statutory language appears to find that evidence relevant for consideration. *See Matter of Kunkle v. Lupardus*, 11th Dist. No. 96-P-0014, 1997 WL 158104 (Mar. 28, 1997) (in considering custody for child, court considered appellant's failure to make child support payments concerning his other two children, which is a relevant factor pursuant to R.C. 3109.04). Accordingly, the juvenile court did not abuse its discretion in admitting evidence that father failed to make child support payments for his 16-year-old child.

{¶ 48} Father also argues the juvenile court abused its discretion in admitting an exhibit into evidence because it was not properly authenticated.

{¶ 49} Evid.R. 901(A) states in pertinent part that authentication or identification is a condition precedent to admissibility and authentication is satisfied when there is sufficient evidence to support a finding that the matter in question is what its proponent claims. Generally, authentication is achieved through testimony of a witness with knowledge. *Charter Exp., Inc. v. Indep. Ins. Serv. Corp.*, 11th Dist. No. 91-P-2296, 1992 WL 190184 (Apr. 10, 1992). This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity. *See State v. Mick*, 12th Dist. No. CA2011-08-017, 2012-Ohio-1598, ¶ 27.

{¶ 50} The exhibit in question is a photocopy of a handwritten note or letter, in which father states that his children can go to "grandma" or "aunt's house" for several weeks so that he can "get" some drug rehab, and, thereafter, the children would be returned to him. The

note purportedly contains the signature of father and maternal grandmother.

{¶ 51} At the evidentiary hearing, the father identified the exhibit, read from portions of it, and indicated that he wrote it, but was not asked about his purported signature. Father said maternal grandmother made him write it. Maternal grandmother testified that father wrote the letter and signed it, and she acknowledged her signature on the letter.

{¶ 52} The record shows that both father and maternal grandmother qualify as witnesses with knowledge of the letter, and the juvenile court was satisfied that the letter is what its proponent claimed. The juvenile court did not abuse its discretion in admitting the letter into evidence. Father's third assignment of error is overruled.

{¶ 53} Judgment affirmed.


HENDRICKSON, P.J. and RINGLAND, J., concur.