[Cite as *In re A.D.B.*, 2016-Ohio-7186.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: A.D.B.          :
                                                                CASE NO.  CA2015-10-180
                                          :
                                                                O P I N I O N
                                          :          10/3/2016

                                          :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2014-1056


Douglas Songer, 1029 Clinton Avenue, Hamilton, Ohio 45015, appellant, pro se

Moser Law, LLC, Donald Moser, 1040 Symmes Road, Fairfield, Ohio 45014, for appellee


**S. POWELL, J.**

{¶ 1}  Appellant, a grandfather ("Grandfather"), appeals from the decision of the Butler County Court of Common Pleas, Juvenile Division, denying his request for legal custody of A.D.B., his granddaughter.  For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2}  Grandfather is the paternal grandfather of A.D.B., born December 7, 2010. A.D.B.'s mother ("Mother") and father ("Father") were never married.  After beginning their relationship in 2009, Mother and Father's relationship ended in June of 2012.

{¶ 3}  On November 29, 2012, Grandfather filed a motion for an emergency ex parte

hearing and a motion for custody of A.D.B. after A.D.B. sustained an injury to her neck while in Mother's care. That same day, a magistrate granted Grandfather's request for an ex parte hearing and placed A.D.B. in the temporary custody of Father. The matter was later resolved after the trial court accepted a mediation agreement between Mother and Father that restored Mother as the residential parent and legal custodian of A.D.B. Grandfather then voluntarily dismissed his complaint seeking legal custody of A.D.B. on January 7, 2013.

{¶ 4} Approximately six months later, on July 9, 2013, Grandfather filed another complaint seeking legal custody of A.D.B. As part of this complaint, Grandfather alleged Mother had "engaged in the use of illegal drugs and substances, including, but not limited to marijuana while the minor child was present." Grandfather also alleged that Mother's apartment had recently been "raided by local police on belief that the residents were engaging in illegal drug use and substance abuse." Grandfather later amended his complaint to allege the police had actually raided A.D.B.'s maternal grandmother's residence.[1] Grandfather voluntarily dismissed this complaint on March 27, 2014.

{¶ 5} Approximately seven months later, on October 22, 2014, Grandfather filed yet another complaint seeking legal custody of A.D.B. As part of his complaint, Grandfather again alleged that Mother had "engaged in the use of illegal drugs and substances, including, but not limited to, marijuana while in the presence of the minor child." Arguing his most recent complaint seeking legal custody of A.D.B. was frivolous, Mother filed a motion requesting the trial court order Grandfather pay her attorney fees. In response, Grandfather filed a motion requesting Mother be drug tested.

{¶ 6} A two-day hearing on these matters was heard on September 2 and September

---

1. The record indicates that the Fairfield Police Department conducted a search of maternal grandmother's residence after receiving an anonymous tip that she was dealing drugs. It is undisputed that Grandfather made the anonymous tip that led to the issuance of the search warrant. No charges were ever filed as a result of the search of maternal grandmother's residence. According to maternal grandmother, Grandfather made the anonymous tip as a form of retaliation.

9, 2015. At this hearing, Grandfather called several witnesses to testify as to Mother's alleged prior drug use, as well as the investigation into the incident where A.D.B. sustained an injury to her neck. A report from Cincinnati Children's Hospital admitted into evidence classified the injury as an "[a]brasion or friction burn of neck without infection" that could be treated with cold water and antibiotic ointment. Mother, the only witness to the alleged incident, testified that the injury occurred after A.D.B. "put a hangar over her head and was dancing to Dora with it and kind of moved it back and forth on her own neck." No criminal charges were ever brought against Mother regarding this incident as the investigation into Grandfather's allegations of abuse were found to be unsubstantiated.

{¶ 7} Following this hearing, on September 16, 2015, the trial court issued a decision denying Grandfather's complaint for legal custody of A.D.B. In so holding, the trial court determined that Grandfather failed to prove the injury to A.D.B.'s neck "was the result of any cause other than that which was concluded by the staff at Children's Hospital as well as local law enforcement." The trial court also determined that Grandfather had "failed to present any credible evidence as to the Mother's unsuitability." Instead, the trial court found Grandfather's witnesses actually testified that "the Mother and the minor child have a positive relationship, a close emotional bond, and that the Mother takes good care of the minor child." The trial court further denied Grandfather's request to have Mother drug tested and ordered Grandfather to pay Mother's attorney fees upon finding his most recent complaint seeking custody of A.D.B. was frivolous.

{¶ 8} Grandfather now appeals from the trial court's decision, raising five assignments of error for review.

**Standard of Review**

{¶ 9} Trial courts enjoy broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. As a result, the standard of review

in custody decisions is whether the trial court abused its discretion. *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court must not substitute its judgment for that of the trial court. *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 26.

{¶ 10} In determining whether a modification of custody is warranted, the trial court must generally follow R.C. 3109.04(E)(1)(a). Pursuant to that statute:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶ 11} Although R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," Ohio courts have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10. Thus, in order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 12} If a change in circumstances has occurred, "the trial court can modify custody only if the modification is necessary to serve the best interest of the child." *Hunter-June v. Pitts*, 12th Dist. Butler No. CA2013-09-178, 2014-Ohio-2473, ¶ 14. In determining the best interest of a child, the trial court is required to consider all relevant factors listed in R.C. 3109.04(F)(1). These factors include, but are not limited to, the wishes of the child's parents

regarding the child's care; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; and the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a), (c), (d), and (e).

{¶ 13} However, as this court recently stated, "the best interest standard in a child custody proceeding between a parent and a nonparent applies only after a threshold determination that the child's parents are deemed unsuitable." *In re J.T.S.*, 12th Dist. Preble No. CA2014-09-009, 2015-Ohio-364, ¶ 12, citing *In re Perales*, 52 Ohio St.2d 89 (1977). Thus, if a parent has custody of his or her child, and no custody award has previously been made to a nonparent, "a custody dispute with a nonparent is determined under the *Perales* standard." *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, ¶ 10 (4th Dist.). This requires the trial court to find by a preponderance of the evidence that the parent is unsuitable in "that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." *Robinson*, 2013-Ohio-453 at ¶ 10. Nonparents seeking custody have the burden of demonstrating a parent's unsuitability. *In re D.C.J.*, 8th Dist. Cuyahoga Nos. 97681 and 97776, 2012-Ohio-4154, ¶ 57.

**Grandfather's Assignments of Error**

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR DRUG TESTING.

{¶ 16} In his first assignment of error, Grandfather argues the trial court erred by denying his motion to have Mother drug tested. In support of this claim, Grandfather alleges that there is reason to believe Mother uses drugs based on "numerous examples with clear

statements of evidence that [she] was involved in drug usage." However, while the record does contain some testimony to support Grandfather's claims, there was also testimony that Grandfather's allegations were either untrue or were in reference to events that may have occurred many months if not years prior. This includes both affidavits attached to Grandfather's motion requesting Mother be drug tested, documents that were dated and signed over two years earlier on February 2, 2013 and May 10, 2013, respectively.

{¶ 17} It is well-established that the trial court, as the trier of fact, is free to believe all, part, or none of the testimony of each witness. *In re S.C.T.*, 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24. That is because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony. *Kohus v. Daly*, 12th Dist. Clermont No. CA2015-05-042, 2016-Ohio-73, ¶ 43. However, even assuming the trial court had accepted the testimony regarding Mother's prior drug use as true, just as the trial court found, "there was not sufficient evidence of current substance abuse on the part of the Mother to justify the expense associated therewith." We find no error in the trial court's decision. In so holding, we note that Mother explicitly denied drinking alcohol or smoking marijuana when A.D.B. was present. Mother also denied Grandfather's allegations that she had taken Xanax and driven drunk while A.D.B. was in the car with her. The trial court clearly found this testimony credible. Accordingly, Grandfather's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED IN RELEASING THE FAIRFIELD POLICE CHIEF MICHAEL DICKEY FROM APPEARING ON SEPTEMBER 9TH, 2015.

{¶ 20} In his second assignment of error, Grandfather argues the trial court erred by releasing Fairfield Police Chief Michael Dickey from appearing as a witnesses on the second day of the two-day hearing conducted on September 9, 2015. Yet, the record makes clear

that Chief Dickey did appear and testify as part of Grandfather's case-in-chief on September 2, 2015, the first day of the two-day hearing. The record also indicates that when asked by the trial court if he was going to conclude his case that day, Grandfather stated "Yes, ma'am." Grandfather then notified the trial court that he would not be calling any additional witnesses to testify besides Father.

{¶ 21} After a thorough review of the record, we fail to see how the trial court erred in releasing Chief Dickey as a witness. In so holding, we note that Grandfather only provided this court with a partial transcript of the two-day hearing before the trial court, which did not include Chief Dickey's testimony, thereby limiting our review of this issue on appeal. "Absent a full trial transcript, this court must presume the validity of the trial court's determinations[.]" *Bunnell Elec. Inc. v. Ameriwash*, 12th Dist. Warren No. CA2004-01-009, 2005-Ohio-2502, ¶ 9. This court is also unable to evaluate Grandfather's claim that he was not given sufficient time to review Chief Dickey's investigatory file. Therefore, Grandfather's second assignment of error is overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE TRIAL COURT ERRED IN NOT ALLOWING DANIEL COMPSTON TO DISCUSS HIS INTERVIEW WITH DR. SHAPIRO CONCERNING THE PHOTOS OF THE INJURIES TO MINOR CHILD [A.D.B.].

{¶ 24} In his third assignment of error, Grandfather argues the trial court erred by precluding his witness, Daniel Compston, a former investigator with Butler County Children's Services, from testifying as to statements made by Dr. Robert Shapiro, a physician with the Cincinnati Children's Hospital, during an interview Compston conducted with Dr. Shapiro regarding the injuries A.D.B. sustained to her neck. The statements Dr. Shapiro may have made to Compston during this interview are clearly hearsay and were properly excluded by the trial court. Therefore, Grandfather's third assignment of error is overruled.

{¶ 25} Assignment of Error No. 4:

{¶ 26} THE TRIAL COURT ERRED BY IGNORING THE CLEAR AND CONCRETE EVIDENCE AND/OR TESTIMONY AS PERTAINS TO THE UNFIT CHARACTER OF THE DEFENDANT-APPELLEE.

{¶ 27} In his fourth assignment of error, Grandfather argues the trial court's decision denying his complaint for legal custody of A.D.B. was against the manifest weight of the evidence. We disagree.

{¶ 28} As it relates to a manifest weight of the evidence challenge, "a reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re W.A.*, 5th Dist. Muskingum No. CT2013-0002, 2013-Ohio-3444, ¶ 19. In making this determination, "'an appellate court is guided by the presumption that the trial court's findings were correct.'" *In re M.D.*, 12th Dist. Butler No. CA2006-09-223, 2007-Ohio-4646, ¶ 28, quoting *In re Peterson*, 10th Dist. Franklin. No. 01AP-381, 2001 WL 988013, *3 (Aug. 28, 2001). Thus, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 28, citing *Flickinger*, 77 Ohio St.3d at 418.

{¶ 29} As noted above, as part of its decision denying Grandfather's complaint for legal custody, the trial court determined that Grandfather failed to prove the injury A.D.B. sustained to her neck "was the result of any cause other than that which was concluded by the staff at Children's Hospital as well as local law enforcement." The trial court also determined that Grandfather had "failed to present any credible evidence as to the Mother's unsuitability." Instead, the trial court found Grandfather's own witnesses actually testified

- 8 -

"the Mother and the minor child have a positive relationship, a close emotional bond, and that the Mother takes good care of the minor child." Again, Grandfather only provided this court with a partial transcript of the two-day hearing before the trial court. Nevertheless, even when reviewing these portions of the record that Grandfather deemed supportive of his claims, we find no error in the trial court's decision.

{¶ 30} As a nonparent, Grandfather had the burden to prove by a preponderance of the evidence that Mother was an unsuitable parent to A.D.B. However, although Grandfather levied a variety of accusations against Mother in an attempt to call into question her fitness as a mother, the trial court determined that none of Grandfather's accusations were credible. Again, as the trier of fact, the trial court was free to believe all, part, or none of the testimony of each witness. Moreover, just as the trial court found, Grandfather's own witnesses actually testified that Mother was a suitable parent to A.D.B. This included testimony that Mother was "good to [A.D.B.]" and that Mother and A.D.B. "love each other very much." Father also testified that Mother was a "a loving caring mother" and that he did not believe Mother caused the injury to A.D.B.'s neck. The trial court's decision was not against the manifest weight of the evidence.[2] Therefore, Grandfather's fourth assignment of error is overruled.

{¶ 31} Assignment of Error No. 5:

{¶ 32} THE TRIAL COURT ERRED IN GRANTING THE APPELLEE ATTORNEY FEES.

{¶ 33} In his fifth assignment of error, Grandfather argues the trial court erred by granting Mother's motion for attorney fees upon finding his most recent complaint seeking custody of A.D.B. was frivolous. We disagree.

---

2. It should be noted, even if the trial court had found credible Grandfather's claim that Mother was an unsuitable parent, that would not have automatically entitled Grandfather to custody of A.D.B as he now suggests. Rather, the trial court would still have to find that granting custody of A.D.B. to Grandfather was in the child's best interest.

{¶ 34} R.C. 2323.51(B)(1) provides that a court may award costs, reasonable attorney fees, and other reasonable expenses incurred in connection with a civil action to a party adversely affected by frivolous conduct. As relevant here, pursuant to R.C. 2323.51(A)(2)(i) and (iii), the term "frivolous conduct" includes conduct that satisfies either of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> * * *
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

{¶ 35} Reviewing a trial court's decision regarding frivolous conduct involves mixed questions of law and fact. *Lucchesi v. Fischer*, 12th Dist. Clermont No. CA2008-03-023, 2008-Ohio-5935, ¶ 4. A trial court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 8. However, we review legal questions de novo, such as whether a party's conduct satisfies the statutory definition of frivolous conduct. *Dudley v. Dudley*, 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 11 (12th Dist.). When an inquiry is purely a question of law, an appellate court need not defer to the judgment of the trial court. *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51-52 (10th Dist.1996).

{¶ 36} As noted above, the trial court granted Mother's motion for attorney fees upon finding Grandfather's most recent complaint seeking custody of A.D.B. was frivolous. In so holding, the trial court stated:

> The Grandfather failed to provide any evidence to suggest that the abrasion on the minor child's neck was caused in any way other than what the Mother has maintained consistently since the

date of the injury. Furthermore, he presented no evidence to refute the testimony and exhibits which established a pattern of harassment and intimidation, directed primarily at the Mother, but also peripherally directed at law enforcement and other professionals who were involved in the investigation. The Court can reach no conclusion other than that the Grandfather * * * engaged in intentional and malicious conduct in an effort to harass and intimated the Mother and her family members.

{¶ 37} As stated previously, Grandfather only provided this court with a partial transcript of the two-day hearing held before the trial court. However, the record before this court clearly indicates that this case represents Grandfather's third attempt to obtain legal custody of A.D.B. based on allegations that Mother is a drug user who abused A.D.B. Once given the opportunity, the trial court determined that these claims had no evidentiary support and served as nothing more than Grandfather's continued attempts to harass and intimidate Mother. We find no error in the trial court's decision.

{¶ 38} While it may be true that Grandfather believes he has A.D.B.'s best interest at heart, repeatedly forcing Mother to spend money on an attorney to defend herself against such claims is improper and unnecessary. Again, while Grandfather may disagree with the investigatory findings, the record clearly indicates that his claims alleging Mother had abused A.D.B. and caused the injuries to her neck were unsubstantiated. Continually filing complaints for legal custody will not change that fact. Therefore, finding no error in the trial court's decision, Grandfather's fifth assignment of error is overruled.

**Conclusion**

{¶ 39} Having found no merit to any of Grandfather's five assignments of error, the trial court's decision denying Grandfather's complaint for legal custody of A.D.B. and ordering Grandfather to pay Mother's attorney fees is affirmed.

{¶ 40} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.

- 11 -