[Cite as *C.A. v. H.S*, 2020-Ohio-4352.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| C.A., | : | CASE NO. CA2019-09-021 |
| Appellee, | : | O P I N I O N <br> 9/8/2020 |
| | : | |
| - vs - | : | |
| | : | |
| H.S., | : | |
| Appellant. | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20140173

Aaron M. McHenry, 2 West Main Street, Chillicothe, Ohio 45601, for appellant

W.S. and C.S., 734 Broadway Street, Washington Court House, Ohio 43160, appellees, pro se

**M. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting legal custody of her minor son, C.A., to appellees, the child's maternal grandfather ("Grandfather") and his wife ("Grandmother") (appellees will be collectively referred to as "Grandparents").

{¶ 2} Mother and Father are the parents of C.A. who was born in February 2013. Mother has custody of the child. On April 16, 2019, Grandparents moved for legal custody of C.A. A hearing on the motion was held before the juvenile court on May 30, 2019, and July 18, 2019. The juvenile court heard testimony from Grandparents, Mother, Father, and three other witnesses. Neither Grandparents nor Mother were represented by counsel at the hearing. Father was represented by counsel on the second day of the hearing.

{¶ 3} On August 2, 2019, the juvenile court granted legal custody of C.A. to Grandparents and parenting time to Mother and Father. The juvenile court found both parents to be unsuitable.[1] Specifically, the juvenile court found that Mother had repeatedly moved C.A. and frequently left him with Grandparents; as a result, C.A. attended three different schools while in kindergarten; and Mother had been "in and out of multiple relationships with a variety of men, many of whom ha[d] treated her and the child poorly." The juvenile court noted that some of the men had criminal backgrounds and one was a registered sex offender. The court further noted that Mother had met some of the men online and moved in with them within a matter of days. Upon considering the factors set forth in R.C. 3109.04(F)(1), the juvenile court further found it was in the best interest of C.A. to grant legal custody to Grandparents.

{¶ 4} Mother now appeals, raising one assignment of error:

{¶ 5} THE TRIAL COURT ERRED IN AWARDING CUSTODY OF APPELLANT'S CHILD TO APPELLEES.

{¶ 6} Mother argues the juvenile court erred in awarding legal custody of C.A. to Grandparents because the record does not support the court's finding she is an unsuitable

---

1. The juvenile court found that Father was an unsuitable parent based upon his testimony he was currently unemployed due to injury, his acknowledgment he was not in a position to take custody of C.A. at that time, and the fact he supported Grandparents' motion for legal custody of C.A.

parent or that granting legal custody to Grandparents is in C.A.'s best interest.

{¶ 7}   Legal custody is not as drastic a remedy as permanent custody because parents retain residual rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17.   Nonetheless, "the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16.  "Ohio courts have sought to effectuate the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of their children." *Id.* at ¶ 17.

{¶ 8}   Where a juvenile court is determining child custody in a custody proceeding between a parent and a nonparent, the court may not award custody to the nonparent without first making a finding of parental unsuitability, that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *Id.*; *Morrison v. Robinson*, 12th Dist. Fayette No. CA2012-06-019, 2013-Ohio-453, ¶ 10.  The record indicates that the juvenile court found Mother unsuitable as custodian of C.A. because such custody would be detrimental to the child.

{¶ 9}   When reviewing custody issues, a juvenile court's decision is granted great deference and will not be disturbed on appeal absent an abuse of discretion. *In re A.C.C.*, 12th Dist. Warren No. CA2018-03-028, 2018-Ohio-4719, ¶ 40.  An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*  When applying an abuse-of-discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Id.*  The discretion afforded to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding

- 3 -

and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A deferential review in a child custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate well to the record. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260; *Morrison* at ¶ 27.

{¶ 10} Mother challenges the juvenile court's finding she is an unsuitable parent, arguing that there is no evidence her housing situation was unstable and that the only evidence Mother had multiple partners over a short period of time was based solely upon Grandmother's questioning during the hearing, allegations Mother repeatedly denied.

{¶ 11} After a thorough review of the record, we find that testimony at the hearing supports the juvenile court's finding of unsuitability. Mother's testimony shows that between August 2018 and the May 2019 hearing, Mother lived two weeks in Tennessee where she intended to relocate and where she enrolled C.A. in school. Then, upon returning to Ohio, Mother lived in Jeffersonville, Bloomingburg, Toledo, Bloomingburg again for a couple of days, Jeffersonville again, and now Fostoria where she is waiting on an apartment to become available for her to move into. Residing in seven different places in the span of nine months hardly qualifies as stable housing. Mother admitted that as a result of her frequent moves, C.A. attended three different schools while in kindergarten. To wit, C.A. started kindergarten in Tennessee and spent two and one-half days in class, then attended kindergarten in a school in Washington Court House, and ultimately finished the year in Fostoria.

{¶ 12} In support of its unsuitability finding, the juvenile court also noted that Mother was involved in relationships with 11 different men in the span of one year. The juvenile court described the character of the majority of these men, noted when they had a criminal history, and described how many had treated Mother and C.A. poorly. While Father and

one of his relatives both testified seeing Mother with different men during visitation exchanges, this list of men was mostly based upon Grandfather's testimony. None of the men with whom Mother was allegedly romantically involved testified and Grandparents did not provide any physical evidence of her multiple relationships. Mother testified that all but one of the men were just friends.

{¶ 13} However, the testimony of Mother and an acquaintance of hers shows that at the very least, Mother engaged in relationships with three of the men identified by the juvenile court (hereinafter referred to as Boyfriend 1, Boyfriend 2, and Boyfriend 3). Grandfather personally knew Boyfriend 1, had known him since he was a child, and described him as having a terrible temper and a severe drinking problem. Grandfather testified that upon picking up Mother's possessions at the home of Boyfriend 1, the latter pulled a weapon on Grandfather and subsequently went to jail. Mother testified that she stayed at the apartment of Boyfriend 2 for "a couple of days or so," yet changed her mailing address to his. Boyfriend 3 lives in Fostoria; Mother lives with his mother while waiting for an apartment to become available.

{¶ 14} Another man identified by the juvenile court is a registered sex offender. Grandfather testified he has known the man since he was a child and described him as a "very violent" individual who has been to prison for drugs, theft, "beating up his own mother," and sexual misconduct with a minor. Mother testified she knew the man had been to prison for drugs but denied knowing he was a registered sex offender. When asked whether she had put this man's name on C.A.'s emergency contact list at school, Mother replied, "Not that I know of."

{¶ 15} In discussing Mother's multiple relationships with men and her frequent moves, the juvenile court noted that Mother had serious credibility issues in that she had "omitted several items where the child has lived and with whom" on her R.C. 3127.23

- 5 -

affidavit, including the fact C.A. has lived with Grandparents for extensive periods of time throughout his life, and had claimed to only have gone to Tennessee on vacation (and not lived there) despite filing a Notice of Intent to Relocate to Tennessee and enrolling C.A. in kindergarten there in August 2018.

{¶ 16} Credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. *Miller*, 37 Ohio St.3d at 74. Therefore, an appellate court affords deference to a judge's findings regarding witness credibility. *In re J.D.,* 12th Dist. Butler No. CA2005-09-375, 2006-Ohio-3468, ¶ 33.

{¶ 17} In light of the foregoing, we find that the juvenile court did not err in finding that Mother is unsuitable as custodian of A.C.

{¶ 18} Mother next asserts the record does not support the juvenile court's finding that granting legal custody to Grandparents is in C.A.'s best interest, especially since the court did not interview the child or appoint a guardian ad litem.

{¶ 19} In ruling that C.A.'s best interest would be served by granting legal custody to Grandparents, the juvenile court made the following findings. The court noted that Mother wished to retain custody of C.A. while Father wanted Grandparents to have custody of the child. The court found that C.A. had a lot of interaction with Mother and Grandparents, has regularly visited Father, and is well-adjusted in Grandparents' home. The court further found that Mother has repeatedly moved and lived with a variety of men, resulting in C.A. attending three different schools in the past school year. The court noted it was "unclear how the child could adjust to this constant change." At the time of the hearing, C.A. was six years old. Finally, the court noted Mother's history of violating court orders regarding Father's visitation with C.A.

{¶ 20} Upon a thorough review of the record, we find that the juvenile court did not abuse its discretion when it determined that legal custody to Grandparents was in C.A.'s

best interest. As stated above, Mother repeatedly moved C.A. and as a result, had him attend three different schools in two different states while in kindergarten. Mother ultimately moved to Fostoria without filing a Notice of Intent to Relocate there. Boyfriend 1, with whom Mother lived for several months, was described as an individual with a terrible temper and a severe drinking problem who ultimately pulled a weapon on Grandfather when the latter went to pick up Mother's possessions at the home of Boyfriend 1. Another man involved with Mother is a registered sex offender, a matter Mother did not know.

{¶ 21} A parent of Boyfriend 3 described Mother and C.A. as a very loving family and testified that C.A. loves Mother, school, and life. However, the witness admitted she had only known Mother and C.A. "for a short while." Mother generally testified she takes great care of C.A. and denied having men around the child. Mother further testified that the several men identified as her boyfriends were just friends of hers, and that Grandparents lied through most of their testimony to make her look bad.

{¶ 22} Grandparents testified that Mother has been involved with several unsavory men, that she has a tendency to move in with men within a matter of days of meeting them and in fact moved to Fostoria with C.A. within seven days of meeting Boyfriend 3, and that they had to rescue Mother "from the men she had hooked up with" on four occasions. Grandfather testified that Mother has left C.A. with them for long periods of time without calling or spending time with the child, and that C.A. has lived with and been cared for by Grandparents for the majority of C.A.'s life. In fact, Grandfather estimated that they had had C.A. for 150 of the last 180 days. Grandfather stated that C.A. has his own bedroom at Grandparents' house. Grandfather testified C.A. is very relaxed, happy, and calm whenever he stays at Grandparents' house whereas he shows distress "from the constant moving and jumping from men to men."

{¶ 23} In light of the foregoing, we find that the juvenile court did not err in granting

- 7 -

legal custody of C.A. to Grandparents. Mother's assignment of error is overruled.

{¶ 24} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.