[Cite as *Ettayem v. Land of Ararat Invest. Group, Inc.*, 2017-Ohio-8835.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashraf Ettayem, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-93 |
| v. | : | (C.P.C. No. 15CV-9869) |
| The Land of Ararat Investment Group, Inc. et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

---

D E C I S I O N

Rendered on December 5, 2017

---

**On brief:** *Ashraf Ettayem*, pro se. **Argued:** *Ashraf Ettayem.*

**On brief:** *Terry K. Sherman*; *Irving B. Marks*, for appellees. **Argued:** *Terry K. Sherman.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Ashraf Ettayem, appeals from a decision of the Franklin County Court of Common Pleas granting judgment in favor of defendants-appellees, Tigran Safaryan and the Land of Ararat Investment Group, Inc. For the following reasons, we affirm in part and reverse in part.

I. Facts and Procedural History

{¶ 2} This case arises out of business dealings between the parties. Defendant Safaryan is the sole shareholder and manager of defendant Land of Ararat, a corporation whose only asset is a small shopping center located at the intersection of Groveport, Watkins, and Lockbourne Roads in Franklin County (the "Southfield Center"). Appellant is a former minority shareholder in Land of Ararat, and through his own wholly-owned

corporation, EMA Group Corp. ("EMA"), operated at various times a retail business known as Shop N Save in the Southfield Center. Appellant purchased 20 percent of Land of Ararat's stock in 2004.

{¶ 3}   EMA first opened Shop N Save in the Southfield Center in 2007, operating without a written lease. By 2009, the business was inactive although EMA maintained some property and equipment in the former store space. The evidence in the case generally establishes that the only other useful tenant in the Southfield Center at the time was a small pharmacy occupying the storefront adjacent to the former Shop N Save, although Land of Ararat eventually leased an undeveloped area of the property to a cell phone tower operator for $700 per month.

{¶ 4}   After closing the Shop N Save, appellant became dissatisfied with the return on his investment in Land of Ararat. In 2009, the parties negotiated two parallel transactions under which (1) appellant would sell his 20 percent stake in Land of Ararat to Safaryan, and (2) EMA and Land of Ararat would enter into a commercial lease with the intention of re-opening the Shop N Save store.

{¶ 5}   Appellant offered to sell his 20 percent interest in Land of Ararat for approximately $100,000, and Safaryan accepted; the figure was eventually adjusted to reflect the relative advantages to each party accruing from the impending storefront lease for a revived Shop N Save operation. The transaction closed on January 7, 2010, with a stated price of $95,000 paid in the form of a $10,000 deposit, $60,000 due the day after closing, and a $25,000 note due April 10, 2010.

{¶ 6}   Contemporaneously with the sale of appellant's shares, EMA and Land of Ararat entered into a five-year lease of "approximately 7000-7500 square feet" at 2950 Groveport Road in the Southfield Center at $2,000 per month with the first four months waived. (Comp., Ex. C at 1.) The named parties are EMA and Land of Ararat, and the signature block contains appellant's signature in his capacity as president of EMA. In a final paragraph appearing after the notarized acknowledgements of signature, Ettayem personally guaranteed EMA's lease payment obligations for the first six payable months of the lease, May through October 2010.

{¶ 7}   EMA's Shop N Save briefly reopened at the leased location and then closed again amid disputes over the condition of the premises. Some time later, the parties also

disagreed over access to the now-vacant premises and removal of the Shop N Save store fixtures.  Appellant then brought this action contesting both Land of Ararat's performance under the lease and Safaryan's conduct pertaining to the stock sale.  The matter is now in its second incarnation pursuant to a refiled complaint.

{¶ 8}    EMA and appellant initially commenced the matter on December 10, 2013 with a complaint naming both as plaintiffs and stating claims for breach of lease contract, conversion of the store equipment, breach of fiduciary duty, fraud, and punitive damages.  The first two claims were by EMA and arose out of the lease agreement, while the third and fourth claims were by appellant personally and arose out of appellant's sale of his minority interest in Land of Ararat.  The fifth claim for punitive damages was derivative of the four substantive claims.  The first and second claims were voluntarily dismissed without prejudice by counsel for EMA on October 29, 2014.  On October 30, 2014, appellant personally dismissed the remaining causes of action without prejudice.

{¶ 9}    Appellant, proceeding pro se, refiled a complaint restating the same five claims on October 30, 2015.  EMA is not a named plaintiff and appellant now asserts all claims on his own behalf, including those arising out of the lease between EMA and Land of Ararat.  Appellees filed a motion to dismiss the complaint as untimely, which the trial court denied by entry filed January 26, 2016.  Appellees then filed an answer that included affirmative defenses addressing standing, timeliness, and failure to state a claim.

{¶ 10} Discovery proceeded with an exchange of requests for admissions, interrogatories, and requests for production.  Appellant appeared for a lengthy deposition on July 15, 2016.  The trial court granted appellant's motion to extend discovery on July 26, 2016.  On August 29, 2016, appellees again moved to dismiss the first, second, and fourth causes of action for failure to state a claim, asserting that appellant was not the real party in interest for claims arising from the lease, and that the fraud claim based on the stock sale was not stated with sufficient particularity.  The court did not immediately decide this motion.

{¶ 11} Appellees moved for summary judgment on October 11, 2016.  This motion incorporated by reference their still-pending motion to dismiss.  The evidence in support of summary judgment included appellant's deposition and the operative documents for the storefront lease and stock sale.  Appellant then moved to again extend the discovery

cutoff. He also sought additional time to respond to the summary judgment motion and requested a status conference. The trial court, by entry dated November 4, 2016, denied an extension of discovery but granted appellant until November 17, 2016 to file his memorandum in opposition to summary judgment. The court did not order a status conference.

{¶ 12} The trial court rendered judgment in favor of appellees on all claims on January 5, 2017. The court found that the first two claims, which are based on the alleged breach of the lease and conversion of store equipment, failed because appellant, acting pro se, could not file claims on behalf of the corporate entity EMA, and were also time-barred because he had refiled them more than one year after the initial dismissal on October 29, 2014. The court further found with respect to the third cause of action for breach of fiduciary duty that appellant had submitted no evidence to maintain a genuine issue of material fact regarding any breach by Safaryan of the fiduciary duty owed to appellant as a minority share holder. The court found the fourth claim for fraud was pleaded with insufficient particularity under Civ.R. 9(B), and there was no evidence to support even a sufficiently-pled claim for fraud. The court then granted judgment on the fifth cause of action for punitive damages, which was entirely derivative of the first four claims.

## II. Assignments of Error

{¶ 13} Appellant appeals and assigns the following three assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
>
> [II.] THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, AND FOURTH CAUSES OF ACTION.
>
> [III.] THE TRIAL COURT ERRED WHEN [IT] DENIED PLAINTIFF'S MOTION TO EXTENED [sic] DISCOVERY, REQUEST FOR A HEARING AND CLEARED ITS DOCKET OF PLAINTIFF'S REQUEST FOR A STATUS CONFERENCE.

### III. Discussion

{¶ 14} We begin with appellant's third assignment of error, which asserts the trial court erred when it denied his motion to extend discovery and request for a status conference. Appellant asserts he had multiple difficulties with discovery and needed to develop new evidence based on the content of Safaryan's deposition. The trial court granted only a short extension for appellant to reply to the pending motion for summary judgment.

{¶ 15} Trial courts possess broad discretion over the discovery process. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 18. Appellate courts, therefore, generally review a trial court's decision regarding a discovery matter only for an abuse of discretion. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592 (1996); *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, ¶ 9; *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 13.

{¶ 16} The trial court noted that discovery had proceeded through previous extensions, and the refiled case benefitted from proceedings preceding dismissal of the first complaint. To the extent that appellant claimed at the eleventh hour appellees had not provided complete responses to his requests for documents, we note the record does not disclose any indication appellant had previously sought the assistance of the court to obtain timely cooperation from the defendants. Appellant has not particularized the necessary evidence that would have been uncovered by additional discovery time. Because the court's rulings were consistent with the fair and efficient administration of the case, and because appellant fails to articulate specific prejudice from the trial court's discovery ruling, we can find no abuse of discovery on the part of the trial court's oversight of the discovery process. We overrule appellant's third assignment of error.

{¶ 17} We next discuss appellant's first and second assignments of error together. These address the trial court's disposition of his five substantive claims via dismissal for failure to state a claim or via summary judgment.

{¶ 18} Appellant's first claim asserted breach of the lease agreement. The trial court found he lacked standing to pursue this contract claim on behalf of EMA and the claim must be dismissed. The court also found that the claim was refiled outside the one-

year grace period of the savings statute, and was time-barred.  On these bases, the court dismissed the claim under Civ.R. 12(B)(6) for failure to state claim upon which relief can be granted.

{¶ 19} When reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court's standard of review is de novo.  *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.  *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992), citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989).  In considering a motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint.  *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997). Rather, the trial court may review only the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

{¶ 20}  A trial court must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the non-moving party. *Jones v. Greyhound Lines, Inc.*, 10th Dist. No. 11AP-518, 2012-Ohio-4409, ¶ 31, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."  *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).  The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint.  *Morrow v. Reminger & Reminger Co. L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7.

{¶ 21}  A party may assert a statute of limitations defense through a Civ.R. 12(B)(6) motion to dismiss if the defense is apparent in the complaint.  *Charles v. Conrad*, 10th Dist. No. 05AP-410, 2005-Ohio-6106, ¶ 24; *Stuller v. Price*, 10th Dist. No. 02AP-29, 2003-Ohio-583, ¶ 27.  A defense based on lack of standing may also be raised under Civ.R. 12(B)(6).  *State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, ¶ 13.

{¶ 22} With respect to the statute of limitations issue on the first claim, the trial court erred. The applicable statute of limitations is eight years, pursuant to R.C. 2305.06, governing contracts in writing. The alleged breach of contract occurred no earlier than January 2010. EMA dismissed its lease claim on October 29, 2014 and refiled it on October 30, 2015. The trial court correctly computed that this was outside the one-year period provided under Ohio's savings statute, R.C. 2305.19. *See Shue v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-432, 2017-Ohio-443 (complaint dismissed on March 2nd and refiled the following March 3rd was untimely, being filed one year and one day later). Appellant did not, however, require R.C. 2305.19 to "save" this claim as timely because the applicable eight-year statute of limitations had not yet expired, the breach of the lease having taken place at the earliest in 2010. R.C. 2305.19(A) provides in pertinent part that "in any action that is commenced [and] fails otherwise than upon the merits, the plaintiff * * * may commence a new action within one year after the date of the * * * failure otherwise than upon the merits *or within the period of the original applicable statute of limitations, whichever occurs later*." (Emphasis added). The refiled complaint was timely as to the lease claims.

{¶ 23} Despite this conclusion as to timeliness, we nonetheless conclude the trial court properly dismissed the lease claim because appellant lacked standing to bring this claim on behalf of his corporation, EMA. "A corporation cannot maintain litigation in propria persona, or appear in court through an officer of the corporation or an appointed agent not admitted to the practice of law." *Union Savs. Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60 (1970), syllabus. "Although an individual party may represent himself, such right of self-representation does not extend to parties who are not natural persons." *In re Lawson*, 98 Ohio App.3d 456 (10th Dist.1994).

{¶ 24} The language of the written lease makes clear that the contracting parties are EMA and Land of Ararat. Appellant nonetheless argues that he has standing as a shareholder of EMA and as a guarantor of EMA's performance under the lease. Neither is true.

{¶ 25} With respect to his status a guarantor, appellant's complaint does not allege he was personally called on to make rent payments on behalf of EMA. He therefore alleges no personal injury that would support standing. Moreover, his recourse as a

guarantor if such payments were made might well be a subrogation action against EMA itself rather than the party that contracted with EMA. *See generally Greenzalis v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 16AP-139, 2016-Ohio-8344.

{¶ 26} Insofar as appellant claims standing as the owner of EMA, Ohio law is clear that only a corporation, not its shareholders, can complain of an injury sustained by, or a wrong done to, the corporation. An exception exists when there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and the shareholder suffered a separate and distinct injury. *Hershman's, Inc. v. Sachs-Dolmar Div.*, 89 Ohio App.3d 74, 77-78 (9th Dist.1993). The "special duty" that creates a cause of action in favor of the shareholder as an individual must originate "from circumstances independent of the shareholder's status as a shareholder." *Maloof v. Benesch, Friedlander, Coplan & Aronoff*, 8th Dist. No. 84006, 2004-Ohio-6285, ¶ 20. The lease instrument here creates no such special duty owed by Land of Ararat to appellant, and he therefore lacks standing to pursue a claim under the lease.

{¶ 27} On these two bases, we find the trial court properly dismissed appellant's claim for breach of the lease agreement.

{¶ 28} We now turn to appellant's second claim, which alleges conversion in that Land of Ararat retained or disposed of the store equipment left on the leased premises after the Shop N Save closed. The trial court found, as with the lease claim, that this was a claim that belonged solely to EMA as owner of the equipment, and that the claim was time-barred. In a variation of our approach to the lease claims, we find on the face of the complaint that appellant has standing, but that his claim cannot withstand summary judgment.

{¶ 29} The complaint alleges appellees "wrongfully exercised dominion and control over the plaintiff's personal property," and "plaintiff owns the items and have [sic] a right to possess them." (Comp. at 8-9.) The complaint, therefore, sufficiently alleges injury to appellant as owner of the equipment. However, appellant's own deposition testimony does not support this aspect of the claim. He testified the alleged converted equipment and personal property was the property of EMA, not his own, from 2010 through 2014. (Ettayem Depo. at 102.)

{¶ 30} Summary judgment under Civ.R. 56(C) is appropriate when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). An appellate court's review of summary judgment is de novo. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist).

{¶ 31} Appellant's own deposition testimony leaves no genuine issue of material fact. He was not the owner of the converted equipment, and has no standing to bring a conversion claim. Land of Ararat was entitled to summary judgment on this claim.

{¶ 32} Appellant's third claim asserts Safaryan personally breached his fiduciary duty as majority shareholder when negotiating the repurchase of appellant's minority stake in Land of Ararat. The complaint alleges that Safaryan manipulated the apparent financial condition of Land of Ararat by diverting funds to other enterprises, concealing revenue from tenants of the Southgate Center, and concealing the possibility of a new cell tower lease.

{¶ 33} "A party in a business transaction with another with whom he is in a fiduciary relationship must fully disclose material facts known to him but not to the other. *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 101." *Binsack v. Hipp*, 6th Dist. No. H-97-029 (June 5, 1998). To prove such a claim for breach of fiduciary duty under Ohio law, the following elements must be established: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. *Saxe v. Dlusky*, 10th Dist. No. 09AP-673, 2010-Ohio-5323, ¶ 23, citing *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 36.

{¶ 34} The majority shareholders in a closely-held corporation have a fiduciary duty to minority shareholders. *Crosby v. Beam*, 47 Ohio St.3d 105, 108 (1989), citing *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93 (1969). "Courts in sister states and Ohio appellate courts have found a heighted fiduciary duty between majority and minority shareholders in a close corporation. This duty is similar to the duty that partners owe one

another in a partnership because of the fundamental resemblance between the close corporation and a partnership." *Id.,* citing *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 588-89 (1975). The standard is one of utmost good faith and loyalty. *Id.* Control of the stock in a closed corporation cannot be used to give the majority benefits which are not shared by the minority. *Id.* at 109. Such a breach is actionable by the minority shareholders who are individually harmed. *Id.*; *Franks v. Rankin*, 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 34.

{¶ 35} The parties here agree that appellant was a minority shareholder in Land of Ararat and Safaryan was the majority owner. A fiduciary duty therefore existed. The dispute lies in the second and third elements of the claim, breach of that duty, and damages flowing therefrom.

{¶ 36} Appellant argues that under *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996), appellees could not discharge their burden under Civ.R. 56 simply by making conclusory assertions that appellant had no evidence to prove his case, but were held as the moving party to point to some evidence that affirmatively demonstrates that appellant had no evidence to support each element of the stated claims. Appellant's arguments are summed up by the following statement: "This does not prove that defendant 'Safaryan' has proven that Plaintiff 'Ettayem' was never induced, misrepresented to, and fraudulently omitted from * * * knowing the truth." (Memo. in Opp. at 8.)

{¶ 37} The factual issues involve diversion of funds, concealment of past rents, and non-disclosure of the prospective cell tower lease. In opposition to summary judgment, appellant relied on his own deposition testimony, admissions by appellees, and answers to interrogatories. The deposition testimony at times covered matters of which appellant had no personal knowledge, especially regarding the actual and true lease rates and revenues for the Southgate Center.

{¶ 38} However, on our independent review, we find the record reveals Safaryan did not introduce sufficient unrebutted evidence to warrant summary judgment on the breach of fiduciary duty claim. While there remained no genuine issue of material fact with respect to certain allegations regarding concealment of rents and diversion of funds, appellant presented evidence that established a genuine issue of material fact regarding

non-disclosure of the impending cell tower lease, and a consequent loss to appellant resulting from the undervaluation of his shares in Land of Ararat.

{¶ 39} Appellant testified that when he established his offer price for the sale of his shares in Land of Ararat, he relied on his own assessment of the property undertaken in 2004, and based his offer to sell his shares on his knowledge of the pharmacy rent, his projections of future rent paid by Shop N Save, and a capitalization rate (ten times income) of his own choosing. Appellant did not particularize the supposedly concealed rental payments from the pharmacy, nor does he have personal knowledge of them to the extent he discusses them in his deposition. Beyond his own suspicions, he introduced no independent evidence of concealment or diversion of corporate funds from Land of Ararat. With respect to the revenue from the cell phone tower, however, appellant provided specific facts based on personal knowledge and admissions by appellees. Appellant testified at his deposition that he was not informed by Safaryan or otherwise aware of the planned cell phone tower lease. Rent for this amounted to $700 per month to Land of Ararat. Appellant testified that, had he known of the cell phone tower project, he would have increased his view of the capitalized value of the shopping center by $84,000 and, therefore, increased the value of his 20 percent share by approximately $17,000.

{¶ 40} In sum, the evidence is such that there remains a genuine issue of material fact regarding a breach of fiduciary duty by Safaryan in his role as majority shareholder based on the duty to fully and faithfully disclose potential future revenue from the cell phone tower for Land of Ararat. The trial court erred in granting summary judgment in favor of appellees on this portion of the breach of fiduciary duty claim.

{¶ 41} The final substantive claim in the case was for fraud. The trial court dismissed appellant's fraud claim on the basis that he had not pleaded fraud with sufficient particularity. The court also found appellant had failed to produce evidence to maintain a genuine issue of material fact on this claim. We find the claim was, in fact, sufficiently pleaded and reverse for the evidentiary reasons set forth in the foregoing discussion of the breach of fiduciary duty claim.

{¶ 42} The elements of a fraud claim are as follows: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) that is material to the transaction at

hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance by the injured party upon the representation or concealment, and (6) resulting injury proximately caused by the reliance. *Burr v. Bd. of Cty. Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus.

{¶ 43} In Ohio, fraud cannot be predicated on promises or representations relating to future action or conduct. *Brevoort v. Internatl. Fin. Resources, Inc.*, 10th Dist. No. 93AP-977 (Dec. 30, 1993). To constitute actionable fraud, the misrepresentation must be of a fact existing when the misrepresentation was made or one that previously existed. *Gouge v. BAX Global, Inc.*, 252 F.Supp.2d 509, 515 (N.D.Ohio 2003), citing *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 525, 2002-Ohio-5194 (7th Dist.), citing *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 742 (8th Dist.1992). Generally, a representation concerning a future event will not support a fraud claim, because such a representation is more in the nature of a prediction or opinion about what the future may bring. *Id.* However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future. *Adams v. Margarum*, 10th Dist. No. 16AP-515, 2017-Ohio-2741, ¶ 15.

{¶ 44} Civ.R. 9(B) provides that "[i]n all averments of fraud * * * the circumstances constituting fraud * * * shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Typically, the requirement of particularity includes 'the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud.' " *Carter-Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 433 (10th Dist.1999), quoting *Baker v. Conlan*, 66 Ohio App.3d 454, 458 (1st Dist.1990). "The requirement that fraud be pled with particularity is based upon the principle that a complaint of fraud, frivolously or unjustifiably brought, carries greater potential for unjust consequences and thus a higher burden should be placed upon the plaintiff to support such general allegations with specific facts." *Id.*

{¶ 45} The complaint averred that Safaryan had intentionally misrepresented and concealed specific financial information with the purpose of distorting the value of Land

of Ararat, Safaryan had a duty as majority shareholder to accurately disclose those facts, and appellant had relied on those misrepresentations and omissions. The complaint further avers appellant was damaged by accepting a lesser price for his shares than he would have sought if fully informed. The time, manner, and content of these statements is sufficiently specified. The complaint sufficiently described the transaction at issue and the accompanying elements to satisfy the pleading requirements of Civ.R. 9(B).

{¶ 46} With the fraud claim sufficiently pled, we find the trial court additionally erred in finding that there was no evidence to support it as it relates to the cell phone tower. The above review of the evidence in connection with the breach of fiduciary duty claim demonstrates appellant's ability to maintain a genuine issue of material fact with respect to the existence of the fraud elements of non-disclosure, justifiable reliance, and proximate cause. The trial court's grant of summary judgment on the fraud claim must be reversed.

{¶ 47} Finally, we note the trial court's judgment on the fifth claim for punitive damages is entirely predicated on judgment for the defendants on the four substantive claims. With the revival of the breach of fiduciary duty and fraud claims, the grant of summary judgment on the punitive damages claim as to the cell phone tower must be reversed as well. Appellant's first and second assignments of error are sustained in part and overruled in part.

## IV. Conclusion

{¶ 48} In sum, appellant's first and second assignments of error are sustained in part and overruled in part, and his third assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and remanded to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*

LUPER SCHUSTER and HORTON, JJ., concur.

————————