[Cite as *In re A.T.*, 2022-Ohio-1803.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| A.T. | : | CASE NO. CA2021-06-034 |
| | : | O P I N I O N<br>5/31/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2016 JG 22690

Kroener Hale Law Firm, and Sloan Thacker, for appellant.

Stagnaro Hannigan Koop, Co., L.P.A., and Craig M. Webb, for appellee.

**S. POWELL, J.**

{¶ 1} Appellant ("Father") appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, dismissing his "Modification of Custody" motion, wherein Father requested the juvenile court modify a shared parenting plan and designate him the sole residential parent and legal custodian of his and appellee's ("Mother") son, A.T. For the reasons outlined below, we affirm the juvenile court's decision.

**The Parties**

{¶ 2}   Father and Mother are the biological parents of one child, A.T., a boy, born on August 7, 2014.  Father and Mother were never married.  Both Father and Mother, each of whom live in Clermont County, Ohio, have two other children from previous relationships. This includes Mother's preteen daughter, B.E.  There is no dispute that B.E. was between 11 and 12 years old during the pendency of this case.

**Facts and Procedural History**

{¶ 3}   On June 25, 2018, Father filed a complaint seeking custody or, alternatively, shared parenting of A.T.  The juvenile court held a hearing on Father's complaint on April 16, 2019.  During this hearing, Father and Mother notified the juvenile court they had since reached an agreement for shared parenting of A.T.  Upon being so notified, the juvenile court read Father's and Mother's shared parenting agreement into the record.  The juvenile court then addressed Father and Mother directly and confirmed that their shared parenting agreement was knowingly and voluntarily entered.  Father and Mother then testified and advised the juvenile court that they believed the terms of their shared parenting plan was in A.T.'s best interest.  This included Father's and Mother's respective weekly parenting time schedules.

{¶ 4}   On September 4, 2019, the juvenile court issued an order for shared parenting and adopted Father and Mother's shared parenting plan.  The terms of the shared parenting plan designated both Father and Mother as residential parents and legal custodians of A.T. The plan also set forth the parties' respective weekly parenting time schedules as follows:

> The parties (sic) parenting time shall be divided into two alternating weekly periods, "Week 1" and "Week 2."  Both Week 1 and Week 2 will begin and end on Sunday at 7:00 p.m.
>
> Father's Parenting Time
>
> During Week 1, Father shall have parenting time from Friday at

6:00 p.m. until Monday at 6:00.

During Week 2, Father shall have parenting time from Tuesday at 6:00 p.m. until Wednesday at the start of school, or 9:00 a.m. when school is not in session.

Mother's Parenting Time

Mother shall have parenting time at all times Father does not.

**{¶ 5}** On October 7, 2019, approximately one month after the juvenile court issued its order adopting the shared parenting plan, Father filed a "Modification of Custody" motion requesting the juvenile court modify its prior custody decision by designating him as A.T.'s sole residential parent and legal custodian. To support this motion, Father stated that he was "wanting to change custody to full custody" due to a newly issued domestic violence civil protection order ("DVCPO") against Mother. Father attached to his motion an affidavit alleging that a "change of circumstances" had occurred in the time since the juvenile court adopted the shared parenting plan because Mother was now subject to a DVCPO regarding her preteen daughter, B.E. The record indicates this protection order was approved for one year after B.E.'s father filed a petition for a DVCPO on B.E.'s behalf alleging Mother had been speeding with B.E. in the car when Mother stated that she should just crash the car because Mother would be better off dead.[1]

**{¶ 6}** On November 5, 2019, and as a result of this alleged "speeding incident," Father and Mother reached a "temporary agreement" to reduce Mother's parenting time with A.T. "until further order of the court." This agreement modified Father's and Mother's respective weekly parenting time schedule as follows:

1) Mother shall have parenting time every Wednesday from 6:00 p.m. until the next morning when she shall deliver the child to school/daycare.

---

1. The record indicates Father filed a petition for a DVCPO against Mother on behalf of A.T. on September 23, 2019 as a result of this alleged "speeding incident." Father's petition, however, was subsequently dismissed on November 5, 2019 without the DVCPO ever being issued.

2) Mother shall have parenting time Friday, November 8, 2019 from 6:00 p.m. until 6:00 p.m. on Sunday, November 10, 2019.

3) Mother shall have parenting time Friday, November 15, 2019 from 6:00 p.m. until Sunday, November 17, 2019 at 6:00 p.m., and every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

{¶ 7} Father and Mother also agreed that Mother would "continue in counseling" as part of this temporary agreement. The record indicates that besides two short gaps caused by insurance problems, Mother changing counselors, and/or complications caused by the COVID-19 pandemic, Mother had been attending weekly counseling sessions to address her mental health issues stemming from her diagnosed posttraumatic stress disorder, anxiety, and depression. The record indicates Mother also attended grief counseling every two weeks at her church in addition to her weekly counseling sessions.

{¶ 8} On December 9, 2019, Mother moved the juvenile court to appoint A.T. with a guardian ad litem. The juvenile court granted Mother's motion two days later, on December 11, 2019. The next month, on January 29, 2020, the guardian ad litem filed a report and recommendation with the juvenile court. Thereafter, following Mother's request that the juvenile court order Father to undergo a psychological evaluation, the juvenile court issued an entry ordering both Father and Mother to submit to a psychological evaluation at Mother's expense. Mother was thereafter evaluated on July 8, 2020, with Father's evaluation taking place two weeks later, on July 22, 2020. The record indicates the reports generated from Father's and Mother's psychological evaluations were then provided to the guardian ad litem on February 2, 2021. The guardian ad litem then filed a supplemental report and recommendation with the juvenile court on February 8, 2021.

{¶ 9} On May 24, 2021, the parties reconvened before the juvenile court for a hearing on Father's still pending "Modification of Custody" motion. Upon opening this

- 4 -

hearing, the juvenile court noted that the purpose of the hearing was to address, among other things, "Father's motion to modify custody filed on October 7th of 2019." Neither Father nor Father's counsel objected to the juvenile court's characterization of his "Modification of Custody" motion. The same is true as it relates to Mother. Seeing that both parties agreed on the purpose of that day's hearing, the juvenile court then heard testimony from both Father and Mother as it pertained to Father's "Modification of Custody" motion. The following is a summary of that testimony.

{¶ 10} Father testified that he would like to "modify" his and Mother's shared parenting plan by making a "midweek schedule change" to Mother's parenting time. Father testified that he wanted this change because after A.T. spends the night with Mother on Wednesdays, "on Thursday when [A.T.] gets back from school he generally falls asleep right before dinner or shortly after dinner and it's every Thursday." Father also testified that he would like the juvenile court to designate him as A.T.'s sole residential parent and legal custodian. When asked why that was, Father testified that it was because A.T. was "exhausted" on Thursdays and "a six-year-old shouldn't be falling asleep at 6:00 in the evening." Father further testified that A.T. was "not going to bed at a decent time, he's tired, obviously it's not in the best interest of the child." However, when asked if A.T. being tired on Thursdays had caused any issues for A.T. at school, Father testified that he had not "been told anything by the school, no." Father also testified and acknowledged that he had never mentioned this "sleepy issue" to Mother because Mother would have just wanted to "argue about it."

{¶ 11} Father was later asked on cross-examination to explain exactly what had "changed" in the month between the juvenile court's adoption of the shared parenting plan on September 4, 2019, and Father's motion for "Modification of Custody" filed on October 7, 2019. To this, Father generally testified that a change of circumstances had occurred

after he was contacted by B.E.'s father who told him about the alleged "speeding incident" involving Mother and B.E. Father did not provide any testimony about this alleged "speeding incident." Mother, however, did. As Mother testified, "I was driving and I was speeding and I looked down and said, 'Oh my goodness, if I don't slow down I'm going to kill us,' and [B.E.] took it out of proportion." Thereafter, when specifically asked how fast she was driving when she made this comment, Mother testified that she was traveling at 85 m.p.h. Mother then testified:

> Q: Okay and do you recall saying anything to the effect that everybody would just be better off if you just weren't around?
>
> A: No, that's not what I said.
>
> Q: Okay, what besides the one sentence you gave us otherwise did you say?
>
> A: That's all I said.

{¶ 12} After hearing additional testimony from Mother unrelated to the events at issue here, and upon both Father and Mother resting their respective cases-in-chief, the juvenile court continued the matter in progress so that it could conduct an in camera interview with A.T. Once that in camera interview was scheduled, the juvenile court notified the parties that it would have a written decision on Father's "Modification of Custody" motion released within seven to ten days after its in camera interview with A.T. was completed. The record indicates the juvenile court conducted its in camera interview of A.T. on May 26, 2021. One week later, on June 2, 2021, the juvenile court issued a written decision dismissing Father's "Modification of Custody" motion. In so holding, the juvenile court stated:

> In the instant case, the only change of circumstances alleged by the Father is that the minor child is tired after school on Thursdays, after having had overnight parenting time with the Mother on the preceding Wednesday. There was no evidence of any issues or challenges either academically or behaviorally,

at school. If a child is well adjusted, doing well in school, and the child's physical and emotional needs are being met, there is no change of circumstances. Furthermore, the Father corroborated Mother's testimony that he had never raised the issue with the Mother prior to the hearing. The Mother further testified that, knowing there is a concern about the minor child's fatigue level, she will adjust his bedtime accordingly.

(Internal citations omitted.) Father filed a timely notice of appeal from the juvenile court's decision dismissing his "Modification of Custody" motion on June 25, 2021.

**Father's Appeal**

{¶ 13} In his appeal of the juvenile court's decision dismissing his "Modification of Custody" motion, Father raises two assignments of error for review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT A CHANGE OF CIRCUMSTANCES FINDING PURSUANT TO R.C. 3109.04(E) WAS REQUIRED IN ORDER TO MODIFY CUSTODY, RATHER THAN A BEST INTEREST DETERMINATION.

{¶ 16} In his first assignment of error, Father argues the juvenile court erred by applying R.C. 3109.04(E)(1)(a) to the case at bar and finding a "change of circumstances" was necessary before it could grant his "Modification of Custody" motion. This is because, according to Father, his "Modification of Custody" motion was in actuality a motion to "terminate" his and Mother's shared parenting agreement that was governed by R.C. 3109.04(E)(2)(c). However, despite Father's claim, a simple review of the record firmly establishes that Father's "Modification of Custody" motion was just that – a motion wherein Father requested the juvenile court *modify* his and Mother's shared parenting plan by designating him as A.T.'s sole residential parent and legal custodian rather than a motion to *terminate* his and Mother's shared parenting agreement.

{¶ 17} In so holding, we note that the facts in this case are nearly identical to the

- 7 -

facts in *In re B.H.H.,* 12th Dist. Clermont No. CA2016-10-069, 2017-Ohio-8359. In that case, just like in this case, this court found the juvenile court properly treated appellant's "Motion to Modify Order Regarding Custody and Allocation of Parenting Time" as a motion to *modify* the parties' shared parenting plan rather than as a motion to *terminate* the parties' shared parenting agreement where the "motion alleged there had been a change in circumstances regarding the child and thus, it was in the best interest of the child to grant [appellant] sole custody," "[a]t the outset of the evidentiary hearing, the juvenile court identified [appellant's] motion as a 'motion to modify prior custody order'" without any objection from appellant's counsel, and where appellant "presented evidence of change in circumstances regarding himself, [appellee], and the child, thus inducing [appellee] to defend on that basis." *Id.* at ¶ 14-17.

{¶ 18} Therefore, because we find Father's "Modification of Custody" motion was without question a motion to *modify* his and Mother's shared parenting plan and not, as Father suggests, a motion to *terminate* the shared parenting agreement that was governed by R.C. 3109.04(E)(2)(c), the juvenile court did not err by applying R.C. 3109.04(E)(1)(a) to the case at bar and finding a "change of circumstances" was necessary before it could grant Father's "Modification of Custody" motion. Accordingly, finding no merit to any of Father's arguments raised herein in support of his first assignment of error, Father's first assignment of error lacks merit and is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN NOT FINDING THAT THERE WAS NOT (sic) A CHANGE IN CIRCUMSTANCES PURSUANT TO R.C. 3109.04(E)(1)(a).

{¶ 21} In his second assignment of error, Father argues the juvenile court erred in its application of R.C. 3109.04(E)(1)(a) to the case at bar by finding no "change of circumstances" had occurred. We disagree.

{¶ 22} "In determining whether a modification of custody is warranted, the trial court must follow R.C. 3109.04(E)(1)(a)." *Lemasters v. Lemasters*, 12th Dist. Madison No. CA2018-06-018, 2019-Ohio-4395, ¶ 10. "Pursuant to that statute, the juvenile court cannot modify a prior decree unless it first makes two express findings: (1) that there has been a change in circumstances since the time of the prior decree, and (2) that the modification is necessary to serve the best interest of the child." *D.M. v. J.D.*, 12th Dist. Fayette No. CA2016-08-010, 2017-Ohio-4118, ¶ 12. "'The clear intent of the statute is to spare children from the constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment.'" *Bingham v. Elliott*, 12th Dist. Clermont No. CA2012-11-083, 2013-Ohio-3314, ¶ 15, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997), citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416 (10th Dist.1982).

{¶ 23} R.C. 3109.04 does not provide a definition of the phrase "change in circumstances." *In re A.D.B.*, 12th Dist. Butler No. CA2015-10-180, 2016-Ohio-7186, ¶ 11. However, although the phrase "change in circumstances" is not defined within R.C. 3109.04, "Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-2780, ¶ 17, quoting *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10. This means that, "[i]n order to warrant a change of custody, the change in circumstances must be one 'of substance, not a slight or inconsequential change.'" *Heath v. Heath*, 12th Dist. Fayette No. CA2016-08-011, 2017-Ohio-5506, ¶ 37, quoting *Davis v. Flickinger*, 77 Ohio St.3d at 418. The change, however, need not be "substantial." *Nagel v. Hogue*, 12th Dist. Brown No. CA2007-06-011, 2008-Ohio-3073, ¶ 17

{¶ 24} "'In determining whether a "change" has occurred, a trial judge must have

wide latitude in considering all the evidence, and the court's decision must not be reversed absent an abuse of discretion.'" *G.P. v. L.P.*, 5th Dist. Morrow Nos. 2021 CA 0011, 2021 CA 0013, and 2021 CA 0014, 2022-Ohio-1373, ¶ 109, quoting *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23.  "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Lykins v. Lykins*, 12th Dist. Clermont No. CA2019-07-060, 2020-Ohio-2769, ¶ 11, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable.  *In re L.W.*, 12th Dist. Preble No. CA2020-12-019, 2021-Ohio-2461, ¶ 21.  "A decision is unreasonable where it is not supported by a sound reasoning process."  *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22.

{¶ 25} Father argues he produced evidence that showed "three major areas" that established a change in circumstances had occurred in this case.  First, Father argues a change of circumstances occurred based on the "speeding incident" discussed above where Mother was alleged to have been driving 85 m.p.h. with her preteen daughter, B.E., in the car when Mother purportedly stated that she should just crash the car because Mother would be better off dead.  Second, Father argues a change in circumstances occurred because Mother's counseling sessions had not been "consistent" as required by her and Father's "temporary agreement" they entered into on November 5, 2019.  Father instead argues that Mother took two "long," inexcusable "breaks" from attending her weekly counseling sessions.  Third, Father argues a change in circumstances occurred due to A.T. being "abnormally tired" after school on Thursdays when spending the night with Mother on Wednesdays.

{¶ 26} However, even when considering these three issues together rather than individually as single events, occurrences, or situations, we find no error in the juvenile

court's decision finding no change of circumstances had occurred in this case. This is because the juvenile court's decision finding no change of circumstances had occurred was not unreasonable, arbitrary, or unconscionable. The juvenile court's decision was instead reasonable given that it was supported by sound reasoning process. In so holding, we initially note that the alleged "speeding incident" Father argues constituted a change of circumstances did not involve A.T. That incident instead involved another of Mother's children, B.E. We also note that the record indicates the gaps in Mother's otherwise weekly counseling sessions were the result of insurance problems, Mother changing counselors, and/or complications caused by the COVID-19 pandemic, none of which should be attributed to the fault of Mother. This is particularly true here when considering, in addition to her weekly counseling sessions, Mother was also attending grief counseling at her church on a biweekly basis.

{¶ 27} Finally, as it relates to A.T.'s level of fatigue after school on Thursdays when spending the night at Mother's house on Wednesdays, the record indicates that Mother only learned of Father's concerns at the hearing on Father's "Modification of Custody" motion held on May 24, 2021. Upon learning of Father's concerns, Mother testified that she would have no issue adjusting A.T.'s bedtime accordingly from 9:30 p.m. to 8:30 p.m. This falls well short of what this court has considered to be a change in circumstances. *See, e.g., Southworth v. Eskins*, 12th Dist. Fayette No. CA2013-10-028, 2014-Ohio-4523, ¶ 13 ("the juvenile court properly determined that there was a change in circumstances once Mother became involved with a sex offender and began pursuing a marriage with him"). Therefore, because we find no error in the juvenile court's decision finding no change of circumstances had occurred in this case, Father's second assignment of error also lacks merit and is overruled.

**Conclusion**

**{¶ 28}** For the reasons outlined above, and finding no merit to any of Father's arguments raised herein in support of either his first or second assignments of error, the juvenile court's decision dismissing Father's "Modification of Custody" motion is affirmed.

**{¶ 29}** Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.