[Cite as *Anders v. Seitz*, 2023-Ohio-668.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| CLAYTON ANDERS, | : | |
| Appellee, | : | CASE NO. CA2022-09-011 |
| | : | O P I N I O N |
| - vs - | | 3/6/2023 |
| | : | |
| HEATHER SEITZ, et al., | : | |
| Appellant. | : | |


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20140173


Clayton Andres, pro se.

William Seitz and Christa Seitz, pro se.

Josyln Law Firm, and Jennifer L. Springer, for appellant.


**PIPER, J.**

{¶1} Appellant ("Mother") timely appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, denying her motion for a change of parental rights and responsibilities.[1]   Mother desired to modify the juvenile court's previous grant of legal

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

custody to the child's maternal grandfather ("Grandfather") and his wife ("Grandmother"), the appellees herein (collectively, "Grandparents").

## PRIOR PROCEEDINGS

{¶2} Mother and Father are the parents of C.A. who was born in February 2013. On April 16, 2019, the child's Grandparents moved for legal custody of C.A. In a hearing on the motion, the juvenile court heard testimony from Grandparents, Mother, Father, and three other witnesses. Father supported the Grandparents' motion for legal custody.

{¶3} On August 2, 2019, the juvenile court granted legal custody of C.A. to Grandparents and parenting time to Mother and Father. The juvenile court found both parents to be unsuitable. Specifically, the juvenile court found that Mother had frequently moved, which uprooted C.A., and had also frequently left him in the care of Grandparents. As a result, C.A. attended three different schools while in kindergarten. Mother had been "in and out of multiple relationships with a variety of men, many of whom ha[d] treated her and the child poorly." The juvenile court noted that some of the men had criminal backgrounds and one was a registered sex offender. The court further noted that Mother had met some of the men online and moved in with them within a matter of days. Upon considering the factors set forth in R.C. 3109.04(F)(1), the juvenile court further found it was in the best interest of C.A. to grant legal custody to Grandparents.

{¶4} Mother appealed the juvenile court's decision. This court affirmed the juvenile court's decision and upheld the grant of legal custody to the Grandparents. *C.A. v. H.S.*, 12th Dist. Fayette No. CA2019-09-021, 2020-Ohio-4352, ¶ 23. Several years have now passed since the original decision awarding legal custody to Grandparents.

## CURRENT PROCEEDINGS

{¶5} On June 10, 2022, Mother filed a motion for change of parental rights and responsibilities. A hearing was held on July 28, 2022. Mother was represented by counsel

while Grandparents appeared pro se. Father was served with the motion but did not appear.

{¶6}    During her testimony, Mother made a variety of allegations concerning Grandparents and their home. Many of these allegations were disputed or were explained by Grandfather during his testimony. Mother stated that "they," presumably Grandparents and other visitors, talk "very adult like" in front of C.A. When asked to explain further, Mother made the general allegation that the "adult like" talk involved "[t]alking about body parts and videos containing adult activity that are being passed around, laughed, and joked about in front of the children."[2] Mother also stated that her 16-year-old sister lives with Grandparents and that her sister's 17-year-old boyfriend regularly "stays there." Mother speculated that as far as she knew her sister's boyfriend would sleep in the same bed as C.A. Mother's speculation stems from the fact that one Christmas she saw the boyfriend and C.A. in C.A.'s bed with a large teddy bear separating them.

{¶7}    Mother continued raising additional allegations throughout her testimony. Mother stated that C.A.'s room at Grandparents' home is a mess. She further stated that Grandparents have guns in the home that are accessible. Mother also submitted photographs of what she identified as marijuana plants allegedly growing in Grandparents' yard. Additionally, Mother argued that she feels C.A.'s education is not being prioritized. She stated that C.A. can barely read despite being in the fourth grade. She produced a copy of C.A.'s grade card showing he received two Cs and a D. She further stated that she is concerned with C.A.'s school attendance record. Mother indicated on cross-examination that she was unaware C.A. was on an Individualized Education Program ("IEP"). Mother offered no opinion as to whether her past instability had any impact on C.A.'s education.

{¶8}    Grandfather denied the central allegations made by Mother. Grandfather

---

2. Later, Mother indicated that the "laughing, joking" could have had to do with porn. Mother's testimony is notably unspecific and appears to lack certainty.

testified that the guns in the home are locked in a safe. Grandfather stated that the only guns that are out are prop guns that do not fire bullets. Grandfather denied showing C.A. videos of pornography or other vulgarities. He acknowledged that "sometimes someone may get aggravated and possibly say a curse word." Grandfather confirmed that the 17-year-old boyfriend of Mother's sister had stayed the night on a few occasions but stated that the boyfriend sleeps on the couch. Grandfather explained that the boyfriend would stay the night because he helps out with Grandfather's business "we get up early and he does spend the night once in a great while." Grandfather testified that he did not recognize Mother's photographs of marijuana and added that the pictures do not appear to be photographs of his yard.

{¶9} Grandfather testified that C.A. was on an IEP and that Mother was aware of this. Grandfather further testified that when he showed Mother C.A.'s IEP, Mother replied "I guess he's stupid like me." Grandfather also explained that many of C.A.'s absences were because of COVID-19 exposures and that C.A. was required to quarantine. Grandfather stated that he and other family members work with C.A. on his schoolwork. Grandfather is concerned that if Mother regains custody of the child, that she will follow through with her threat that "C.A. will never come to our house again." When asked if Mother made enough improvements to be responsible to make good decisions regarding C.A.'s best interest, Grandfather replied "absolutely not."

{¶10} After taking the matter under advisement, the juvenile court denied Mother's motion on the grounds that she failed to establish a change in circumstances. The juvenile court stated:

> A lot of the evidence presented by mother relates to her own circumstances. The evidence that she has presented regarding grandfather is either disputed by grandfather (such as whether or not marijuana was growing in pots at the property) or is not significant enough to be considered a change in circumstances

which would warrant a change in the best interest of the child. Accordingly, the Court does not find a change in circumstances as required by the statute.

Mother now appeals, raising two assignments of error for review.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED IN PERMITTING A PRO SE PARTY TO ACT IN THE CAPACITY OF AN ATTORNEY DURING THE HEARING.

{¶13} Mother's first assignment of error involves Grandmother's status as a pro se party. Mother argues the juvenile court erred when it allowed Grandmother to cross-examine her. Mother contends that Grandmother is not a licensed attorney, and her questioning of witnesses constituted the unauthorized practice of law.

{¶14} Mother did not initially object when Grandmother cross-examined her. However, before Grandmother began questioning Grandfather, Mother objected on the basis that Grandmother was not an attorney. The juvenile court overruled Mother's objection because Grandmother was an individual party and was permitted to ask the witness questions.

{¶15} Following review, we find Mother's first assignment of error is without merit. Despite Mother claiming that Grandmother engaged in the unauthorized practice of law, the record shows that Grandmother was a party in these proceedings. As an individual party, Grandmother was allowed to represent herself. *In re Lawson*, 98 Ohio App.3d 456, 465 (10th Dist.1994); *Ettayem v. Land of Ararat Invest. Group, Inc.*, 10th Dist. Franklin No. 17AP-93, 2017-Ohio-8835, ¶ 23; *State ex rel. Yost v. Church of Troy*, 11th Dist. Geauga No. 2019-G-0203, 2020-Ohio-4695, ¶ 102. R.C. 4705.01 prohibits acting as an attorney in litigation except to represent oneself as a party. *Id.* The juvenile court appropriately overruled Mother's delayed objection. In this case, Grandmother cross-examined Mother, directly examined Grandfather, and presented closing arguments. This was appropriate

given her status as an individual pro se litigant.[3]  Accordingly, we find Mother's first assignment of error is without merit.

{¶16}  Assignment of Error No. 2:

{¶17}  THE TRIAL COURT ABUSED ITS DISCRETION BY CONCLUDING THAT APPELLANT FAILED TO DEMONSTRATE A CHANGE OF CIRCUMSTANCES AS REQUIRED BY R.C. 3109.04(E)(1)(a) NECESSITATING [sic] A MODIFICATION OF THE PRIOR GRANT OF LEGAL CUSTODY TO THE APPELLEES.

{¶18}  Mother's second assignment of error argues the juvenile court abused its discretion by finding that Mother failed to demonstrate a change of circumstances.  Mother's argument is solely that the Grandparents failed to inform her of C.A.'s "educational or medical issues."  To support this, she claims that she was never made aware of the IEP. Mother claims that knowledge of the IEP was essential in assisting C.A. with homework. For that reason, Mother states that there has a breakdown in communication constituting a change in circumstances.

{¶19}  "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St. 3d 417, 2011-Ohio-3361, ¶ 14.  As "custody issues are some of the most difficult and agonizing decisions a trial judge must make," the judge must be given "wide latitude in considering all the evidence" and the decision must not be reversed absent an abuse of discretion.  *Pierson v. Gorrell*, 12th Dist. Butler No. CA2011-11-216, 2012-Ohio-3878, ¶ 10, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).  The term abuse of discretion "connotes more than an error of law or judgment; it

---

3. Mother did not raise her objection until much later.  Grandmother was permitted to cross-examine Mother. Mother then completed the examination of another witness.  She did not object until Grandfather came forward as a witness.  It is well established that the failure to timely object waives all but plain error.  *State v. Ghee*, 12th Dist. Madison No. CA2008-08-017, 2009-Ohio-2630, ¶ 43; *State v. Kocak*, 7th Dist. Mahoning No. 16 MA 0020, 2016-Ohio-8483, ¶ 31.  However, since there was no error in Grandmother's self-representation we need not examine this issue further.

implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶20} R.C. 3109.04(E)(1)(a) applies to the modification of custodial orders not only between two parents, but also between parents and nonparents. *In re M.A.*, 12th Dist. Butler No. CA2011-02-030, 2012-Ohio-545, ¶ 14, citing *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 18-20. R.C. 3109.04(E)(1)(a) states in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

Therefore, pursuant to that statute, "the juvenile court cannot modify a prior decree unless it first makes two express findings: (1) that there has been a change in circumstances since the time of the prior decree, and (2) that the modification is necessary to serve the best interest of the child." *In re A.T.*, 12th Dist. Clermont No. CA2021-06-034, 2022-Ohio-1803, ¶ 22. The clear intent of the statute is to spare children from a constant tug of war between parties who would file a motion for change of custody each time the party out of custody thought he or she could provide a "better" environment. *Id.*

{¶21} R.C. 3109.04 does not provide a definition of the phrase "change in circumstances." *Pierson* at ¶ 13. However, this court has stated the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Id.* This means that, "[i]n order to warrant a change of custody, the change in circumstances must be one 'of substance, not a slight or inconsequential change.'" *Heath v. Heath*, 12th Dist. Fayette No. CA2016-08-011, 2017-Ohio-5506, ¶ 37, quoting *Flickinger* at 418.

- 7 -

{¶22} After reviewing the record, we find the juvenile court did not err in determining there was a failure to establish a change of circumstances. Nothing supports the suggestion that the juvenile court's decision was unreasonable, arbitrary, or unconscionable. On appeal, Mother complains there has been a breakdown in communication constituting a change in circumstances. The one "example" that Mother emphasizes is the breakdown in communication regarding C.A.'s IEP. Despite Mother claiming no knowledge of the IEP, Grandfather testified that Mother was aware of the IEP and when informed of it she responded that "I guess he's stupid like me." The juvenile court was in the best position to weigh the competing testimony. *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 43.

{¶23} Although Mother raised a number of allegations below that the juvenile court found were disputed or not significant enough to constitute a change in circumstances, Mother does not address them on appeal. In light of the foregoing, we find no error in the juvenile court's decision finding no change of circumstances had occurred in this case. Accordingly, Mother's second assignment of error is without merit and is overruled.

{¶24} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.